## McKinnon v. Braddock.*

(Division B.   May 25, 1925.)

[104 So. 154.   No. 24977.]

1. APPEAL AND ERROR.  *Every material fact which plaintiff's evidence tended to show taken as true in determining whether court properly refused to direct a verdict for defendant.*

   In determining whether court erred in not granting defendant's motion for directed verdict, every material fact which plaintiff's evidence tended to show, either directly or by necessary inference, should be taken as true.

2. MASTER AND SERVANT.  *Whether employee assisting in unclogging conveyor chains was performing duties, or did so contrary to instructions, held for jury.*

   In action for injuries to employee, whose regular duty was to attend roller bed on floor of sawmill, sustained when he went below floor to assist in unclogging conveyor chains, question of whether employee went below floor for such purpose as part of his employment, so as to make employer liable on theory that it failed to furnish him safe place in which to work, or went below floor merely to assist fellow employee, contrary to instructions, *held* for jury.

3. MASTER AND SERVANT.  *Employee furnished safe place cannot recover for injury from placing himself in dangerous place not called for by duties.*

   Employee, who has been furnished safe place to work, and is injured as result of placing himself in a dangerous place not called for by his duties, in order to assist fellow employee, cannot recover.

4. MASTER AND SERVANT.  *Refusal to instruct on defense employee had been injured in dangerous place not called for by duties held error.*

   In action for injuries to employee, whose principal duty was to attend roller bed on floor of sawmill, which were suffered when under floor assisting in unclogging conveyor chains, refusal to instruct on defense, relied on by employer, that employee had been furnished safe place to work, had been instructed not to go under floor, and was injured as a result of placing himself in a

dangerous place not called for by his duties in order to assist fellow employee, *held* reversible error.

*Headnotes 1. Appeal and Error, 4 C. J., section 2709; 2. Master and Servant, 26 Cyc., p. 1462; 3. Master and Servant, 26 Cyc., p. 1089; 4. Appeal and Error, 4 C. J., section 3032; Master and Servant, 26 Cyc., p. 1510.

APPEAL from circuit court of Clarke county.

HON. C. C. MILLER, Judge.

Action by R. H. Braddock against J. T. McKinnon. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*J. L. Buckley* and *Adams & Fatheree,* for appellant.

The appellee sues for twenty-five thousand dollars damages for injuries he alleges he received in April, 1922, while employed by appellant, J. T. McKinnon, at his sawmill. He bases his right of recovery upon the usual allegations of failure of the defendant to provide a safe place in which to work and safe machinery and appliances with which to perform his work. His clothing in some way caught on a revolving shaft.

Appellee failed to show by any sort of evidence that the construction of the mill floors was not in accord with the usual and customary method of construction. Appellee in his own testimony admits that there was a safe route that he could have taken to get to the man Pruett, but he elected to go under an alleged dangerous route which dangers he admits were open and obvious.

Appellant admitted himself that the route appellee took to go to assist Pruitt was dangerous and stated that it was impossible to construct a sawmill without some dangerous places, but appellant in the construction of his mill had these shafts, pulleys, conveyor chains, put under this upper floor and provided an undisputedly safe route to reach them when necessary to work on them. In view of the undisputed testimony of all the witnesses and the admissions dragged out of the appellee, one fact

stands out, namely: If Braddock had not gone through the narrow and admittedly open and obviously dangerous route and had chosen the admittedly safe route he would not have been injured. How then can any negligence be attributable to appellant when the sole cause of his injuries was his selection of a dangerous route when appellant had provided him a safe route. Section 504 of Hemingway's Code, does not apply in this case because no negligence has been shown on the part of the appellant, therefore, appellant's peremptory instruction should have been granted.

The second alleged element of negligence fails because it is not sustained by any evidence that the set screw or bolt was placed in said collar in a careless and unusual way and manner and if it had so shown it is clearly shown that appellee never would have come in contact with the shaft if he had not taken voluntarily the narrow and unsafe route and consequently would not have been injured. The third element of negligence was that the floor was littered up with slabs and sawdust.

Appellee here admits that it was his duty to remove the very thing of which he complains in his declaration as causing his injuries. This appellee was truly the author of his own injuries in selecting the dangerous route and in permitting the slabs and sawdust to litter up the floor and is not entitled to recover therefor, he being a grown man and in his right mind.

We respectfully submit that the court below fatally erred in refusing the instructions numbered 8 to 13 inclusive, asked for by appellant and more especially numbers 10 to 12. This court in *J. J. Newman Lumber Co. v. Dantzler,* 107 Miss. 31, 64 So. 931, decided that the court below erred in refusing instruction number 9 asked by appellant therein. The same principle applies in the court's refusal of instructions number 10 and 12 herein and without quoting their language ask the court to compare the language of number 9 quoted in said case with numbers 10 and 12 herein.

Under all the testimony in this case instructions number 2, 3, 4 and 5 asked for and given appellee should not have been granted at all and granting them they certainly should have modified by adding, "If the jury believe from the evidence his duties called him to such place and that the dangers were not obvious." *Yazoo & Mississippi Valley R. R.* v. *Hullum,* 119 Miss. 229, 80 So. 645. "It is elementary law that employees assume the obvious risks incident to their employment." Using the language of this court in *Ragland* v. *Native Lumber Co.,* 117 Miss. 602, 78 So. 542: "This suit is a somewhat strained effort to impose liability when none in fact exists." The injury is the result of a reckless act of the employee which the master could not foresee or control.

We respectfully submit that this case should be reversed and dismissed.

*Watkins, Watkins & Eager,* also for appellant.

The refusal of instruction No. 11 for the appellant was erroneous. The evidence was undisputed that the appellee had been instructed never to go under that mill when the mill was in operation, and if there was no conflict in respect thereto, and the instruction stated the law correctly, the appellant was entitled to have the jury pass on the facts.

Before the plaintiff could recover he must have been in the performance of some duty incident to his employment. If he had no duty to perform under the mill while in operation, he was wrongfully there, and the appellant was not liable, in spite of his injuries. If the duties of the appellee forbade him going under the mill while it was in operation, even if debris was permitted to accumulate under the mill, or even if there was an unguarded set-screw thereunder, the appellee in going under the mill while the same was in operation was exposing himself to a hazard not required by his employment. Under such circumstances the appellant was not liable and with respect thereto we submit the following au-

thorities: *Richmond & D. R. Co.* v. *Finley* (C. C. A.), 63 Fed. 228.

The master has the right to determine the purposes for which equipment shall be used, and to say what employees shall have duties to perform in respect thereto. If the appellee went under the plant while it was in operation, in violation of positive instructions from his employer, then the appellee was using the equipment for a purpose to which the appellant had not assented, and subjecting himself to a hazard not incidental to his employment. We direct the attention of the court to the following authorities upon that point: *Illinois Central R. R. Co.* v. *Daniels,* 73 Miss. 258; *Bell* v. *Refuge Oil Mill,* 77 Miss. 387, directly in point. *Ten Mile Lumber Co.* v. *Garner,* 117 Miss. 814.

The court below committed error in refusing instructions Nos. 10 and 12, asked by the appellant.

In instructions Nos. 10 and 12 the appellant, in substance, asked the court to instruct the jury that, even if appellee was justified in going under the mill, if he had the choice of methods, or choice of ways, in reaching his point of destination, and chose a dangerous instead of a safe one, that the appellant would not be liable therefor.

In other words, the great preponderance of the evidence, we submit, established the fact that the appellee had the choice of two routes in reaching the point of his destination, one of which would in no manner have exposed him to the machinery in question, and he voluntarily chose a route which he claims was attended with danger. Upon that point we submit the following authorities: *Davis, Director General,* v. *Hand* (C. C. A. 8th Circuit), 290 Fed. 73; *Natchez Cotton Oil Co.* v. *McLain,* 33 So. 723; *Hinton Bros. Lbr. Co.* v. *Polk,* 117 Miss. 300; *J. J. Newman Lbr. Co.* v. *Dantzler,* 107 Miss. 31, 64 So. 931; *Ovett Land & Lbr. Co.* v. *Adams,* 109 Miss. 740; *Buckeye Oil Co.* v. *Saffold,* 125 Miss. 407.

*S. A. Witherspoon,* for appellee.

It is the contention of the appellee that the facts show a clear case of negligence on the part of the master in failing to provide a reasonably safe place for the appellee to work and reasonably safe machinery and appliances with which to work. The place where the appellee was hurt, down under the floor of the saw mill, was built so close to the ground that a man had to stoop over so low that he could not see where he was going; where in total disregard of safety a mass of rubbish was piled up so as to make a precarious footing; where the light was necessarily bad, and where a tangle of belts, pulleys, fly-wheels, conveyor chains, and shafting revolving at the rate of three hundred and ten revolutions per minute (five times to the second), with instructions not to waste any time about locating the trouble, and where so little regard for human life had been shown as to leave a set screw protruding from the shaft turning at the rate of three hundred and ten revolutions per minute, this place evidently was a veritable death trap. If requiring a man to crawl or stumble about in a place like that fails to show breach of duty to furnish a safe place to work, what other or additional dangers would you require? In what respect could McKinnon, if he had tried to do so, make the place under his mill any more dangerous than it was? *Benton* v. *Finkbine Lbr. Co.,* 118 Miss. 558, 79 So. 346.

The claim that Braddock and the other employees were not allowed to go under the mill is denied in Braddock's testimony (R. 37). This claim is also denied in Holland Lewis' testimony (R. 93). Appellant in his brief claims that Braddock in going under the mill was hurt because he elected to go a dangerous route, when there was a safe route that he could have used and that therefore his injury was caused by his own negligence.

We do not construe plaintiff's testimony as admitting anything of the kind (R. 50). Attorneys for defendant cross-examined plaintiff at considerable length in an ef-

fort to make him admit something about a safe route, but without any success.

The contention that there was a safe route to reach the man Pruitt, which, if Braddock had taken it, would have kept him out of danger amounts to nothing, when we come to consider one fact that both sides agree upon. There is no dispute in the testimony but that at the moment Braddock was injured that he had already reached Pruitt, (R. 199) and was standing so close to him that when Braddock's clothing caught on the set screw Pruitt in attempting to save him caught Braddock by the legs (R. 205) and held on to him in an effort to keep him from being wound up on the shaft. What sense, therefore, is there in talking about a safe route to reach Pruitt? He had already reached Pruitt in safety when he was hurt.

For this reason Braddock's statement that the selection of a route had nothing to do with the accident was self-evidently true.

BRADDOCK'S DUTY TO CLEAN UP UNDER MILL. Braddock did not work down under the mill where the litter of slabs was. He worked at the roller bed up in the mill (R. 47, 48) and his duty of cleaning up the slabs on the floor of the mill at the place where he worked had no connection at all with the piles of slabs on the ground under the mill when the accident occurred. Of course, it was utterly impossible for Braddock to have kept the slabs and sawdust cleaned up under the mill, and at the same time attend to his job at the roller bed up in the mill. He was never required to leave his job at the roller bed to go under the mill at all except for a few minutes to unclog a conveyor in case it should become clogged.

THE INSTRUCTIONS. We have no objection to the comparison of instruction number 9 in the Newman Lumber Company case with 10 and 12 in this case. If Braddock had attempted to pull the protruding set screw out of the collar while the machinery was turning, there might have been some similarity between his conduct and that

of the Newman Lumber Company employee in pulling on the raveled belt.

Instruction number 10 was erroneous and properly refused because it ignored plaintiff's evidence on two points and peremptorily instructed the jury on these points, notwithstanding the testimony of plaintiff's witnesses to the contrary. It peremptorily instructed the jury that there was a "usually traveled route to reach Pruitt, which was reasonably safe for a person going underneath said mill."

The idea that Pruitt had some certain spot under the mill where he was accustomed to stay and that there was a beaten path to him like the one to Lenin's tomb, and that this path was known to Braddock and was safe, appears ridiculous, even though it were not contradicted by the testimony.

This refused instruction number 10 was also erroneous because it peremptorily instructed the jury that the route Braddock took was one "which necessitated plaintiff passing over the revolving shaft." This is flatly denied by Braddock (R. 52); and appellant therefore was not entitled to a peremptory instruction to that effect.

One of the main grounds of complaint in this case was, to quote the declaration, (R. 4) "Defendant had negligently failed to provide employees to clean up said sawdust and slabs under said floor." Another was that the set screw was negligently left protruding from the shaft. An instruction which ignored these two important elements of negligence in the case was therefore properly refused.

The seven instructions given to the appellant which will be found on the record pages 229 to 231 inclusive, expounded the law of the case in a way which was at least fair to the defendant, and appellant had no ground of complaint on the instructions.

Argued orally by *W. H. Watkins*, for appellant, and *S. A. Witherspoon*, for appellee.

Anderson, J., delivered the opinion of the court.

Appellee, R. H. Braddock, brought this action in the circuit court of Clarke county against appellant, J. T. McKinnon, a sawmill owner, to recover damages for an injury alleged to have been suffered by appellee as an employee in appellant's sawmill because of the failure of appellant to furnish appellee a reasonably safe place to do the work required of him as such employee. Appellee recovered judgment for one thousand dollars, from which judgment appellant prosecutes this appeal.

The controlling principle of law in this case will be found in *Hinton Bros. Lbr. Co.* v. *Polk,* 117 Miss. 300, 78 So. 179. There, as in the present case, the employee's ground for recovery was based on an alleged unsafe place to work furnished him by his employer. The court said there was no merit under the facts of that case in the plaintiff's contention; that his "injury resulted, not because he was furnished with an unsafe place in which to work, but for the reason that he placed himself in a dangerous position not called for by his work, in order to discharge a duty not incumbent upon him, but upon a fellow employee."

One of the errors assigned and urged with much vigor by appellant is that the trial court erred in not granting his request for a directed verdict.

In determining the propriety of the action of the court in that respect, every material fact which appellee's evidence tended to show, either directly or by reasonable inference, should be taken as true. So viewing the evidence, appellee made, in substance, the following case: He was employed in appellant's sawmill; his principal duties were upon the floor of the sawmill, looking after the roller bed. Down under the floor of the mill were conveyor chains which, at times, became clogged up with slabs and debris. There was down there a rapidly revolving shaft with a set screw, or bolt. It was a dangerous place. There was little, if any, conflict in the evi-

dence as to that fact. Appellee testified that, besides his duties upon the floor at the roller bed, he was instructed by the superintendent of appellant's mill, when he was employed, that whenever anything got wrong with the conveyor chains down under the floor, he was to go down and relieve, or assist in relieving, the difficulty. There was other evidence tending to show that that was a part of appellee's duties. On the other hand, the evidence on behalf of appellant in that respect sharply conflicted with that on behalf of appellee.

Appellant's evidence tended to show that appellee's duties were confined exclusively to the roller bed upon the mill floor, and that he had been instructed not to go down under the floor where the conveyor chains and other machinery were, because it was very dangerous so to do. The conveyor chains under the floor became clogged. Appellant's mill-wright, Pruitt, called appellee down to assist in clearing the conveyor chains. Appellee testified that Pruitt was appellant's "straw boss." Another witness testified that he was the "overseer" of the mill. In obedience to the call, appellee went down under the floor to assist Pruitt in unclogging the conveyor chains. The space between the ground and the floor above was only about four feet. Appellee, while engaged in that work, came in contact with the set screw or bolt on the rapidly revolving shaft, and was injured.

Appellant argues that he was entitled to a directed verdict because appellee left the work for which he was employed, and the place where he was engaged in such work, which was a safe place, and, contrary to appellant's instructions, went down under the floor of the mill into an unsafe place. But as we view the evidence, there was a conflict on that issue of fact.

Appellant contends that the trial court erred in refusing to submit to the jury, by instructions requested by appellant and refused by the court, the question whether, at the time of his injury, appellee was engaged about the work for which he was employed. There can

be no doubt under the law that if appellee was furnished a safe place to work and was injured as a result of placing himself in a dangerous place not called for by his duties, in order to assist a fellow employee he had no right to recover. That was the defense appellant undertook to establish by his evidence. Appellee's case was the exact converse of that. That question, therefore, was the very crux of the case. It was not submitted to the jury in any instruction given for either appellant or appellee. Appellant requested instructions of the court properly submitting the question, which instructions were by the court refused. They should have been given. Their refusal, therefore, was reversible error. We find no other error in the case that we consider was harmful.

*Reversed and remanded.*